The Memorandum Decision and Order below is hereby
signed.  Dated: October 10, 2008.



```
                    _____
                    S. Martin Teel, Jr.
                    United States Bankruptcy Judge
```

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| LINTON PROPERTIES, LLC, <u>et al.</u>, | ) ) | Case No. 08-00095 (Chapter 7) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter** |

MEMORANDUM DECISION AND ORDER RE
CHESAPEAKE BANK & TRUST COMPANY'S MOTION TO
<u>COMPEL TRUSTEE TO COMPLETE SALE OF REAL PROPERTY</u>

Chesapeake Bank & Trust Co. ("Chesapeake") seeks to compel the Chapter 7 trustee of the bankruptcy estate of the debtor Linton Properties, LLC ("Linton") to complete an auction sale held by the debtor at the time it was serving as a debtor in possession in this case prior to the conversion of the case from Chapter 11 to Chapter 7.

By order entered on June 13, 2008, the court authorized the debtor-in-possession to sell certain condominium units (the "Property") at auction. The order did not require that the court confirm the successful bid at the auction sale as being in the best interest of creditors and the estate. The auction sale was

held on June 28, 2008, with Chesapeake being the successful bidder for the Property.  Pursuant to a contract executed that day by Linton and Chesapeake reflecting Chesapeake's successful bid, closing was to occur within 45 days, or by August 12, 2008. Linton's case was converted to Chapter 7 on August 7, 2008.  This Memorandum Decision sets forth my preliminary views on the issues, and sets the matter for hearing as one issue warrants holding a hearing.

I

The trustee contends that the order approving the sale only authorized the sale and did not compel the debtor in possession to complete the sale, and that the doctrine of *res judicata* thus does not bar his refusal to complete the sale.  But Chesapeake is not attempting to enforce the order authorizing the sale. Instead, it is seeking to enforce the contract between Chesapeake and Linton that arose pursuant to the auction sale.  That contract was authorized by the court's having authorized the auction sale.  Such an authorized act of a debtor in possession is binding upon a successor trustee.  <u>Armstrong v. Norwest Bank, Minneapolis, N.A.</u>, 964 F.2d 797, 801 (8th Cir. 1992).  The trustee has not filed a motion under Fed. R. Bankr. P. 9024 (and Fed. R. Civ. P. 60) to set aside the order authorizing the auction sale.

The decisions the trustee relies upon in contending that he

2

is not bound by the contract of sale, In re Cmty. Hosp. of Rockland County, 15 B.R. 785, 787 (Bankr. S.D.N.Y. 1981), and In re Silver Mill Frozen Foods, Inc., 32 B.R. 783, 786 (Bankr. E.D. Mich. 1983), are distinguishable.  Instead of dealing with enforcement of a sale contract duly authorized by the bankruptcy court, they deal with whether a judgment in prior litigation between a debtor in possession and a second party bars a successor trustee from pursuing claims against the second party that were not raised in the prior litigation.

                                II

The trustee points to two adverse consequences which may arise from completing the sale.  The sale may subject the bankruptcy estate to claims pursuant to warranties imposed by Maryland law on any developer (like Linton) who sells condominium property.  It may also subject the bankruptcy estate to adverse tax consequences.  Creditors and the United States Trustee, however, were given the opportunity to object to the proposed auction sale, and did not object to it.  Except in extraordinary circumstances (such as fraud in obtaining the sale order or collusive bidding), a successful bidder at a duly authorized auction sale is entitled to assume that the agreement of sale arising from that successful bid will be enforceable, without parties in interest being allowed to revisit the pros and cons of whether permitting an auction sale was in the best interest of

creditors and the estate.  Moreover, the trustee has not addressed the issue of whether the warranty obligation arose upon the contract of purchase being formed, and has not shown that the auction sale was not at a loss.

### III

The trustee next contends that there is a mechanic's lien in excess of $200,000 against the Property.  He questions whether the order authorizing the sale was effective to sell the Property free and clear of that mechanic's lien.  Chesapeake, however, does not appear to be concerned in that regard, and the mechanic's lien is a matter of concern for Chesapeake, not the trustee.[1]  In any event, it does not matter whether the trustee is correct that the mechanic's lienor could have successfully objected to the sale free and clear of its lien based on an assertion that 11 U.S.C. § 363(f) did not authorize the court to direct that the sale of the Property would be free and clear of the lien.  The trustee has not demonstrated any defect in service on the mechanic's lienor of the motion to sell the Property free and clear of its lien (and the accompanying notice of opportunity to oppose that motion).  Without any defect in service on the

---

[1] If the Property *was* sold free and clear of the mechanic's lien, the mechanic's lien attached to the proceeds of sale with the same rank of priority, if any, as it enjoyed previously.  If the Property was *not* sold free and clear of the mechanic's lien, then Chesapeake can opt to complete the sale with the mechanic's lien still upon the Property, or it can opt not to go forward with the sale.

4

mechanic's lienor, the order granting the motion is binding on the mechanic lienor, with the consequence that the sale *was* free and clear of the mechanic's lien.

IV

The trustee finally contends that he needs to investigate further whether completing the sale would be in the best interest of creditors and the estate. If completing the sale would be burdensome to the estate, he contends that he could opt to abandon the Property. Chesapeake contends that any warranty obligation and any tax consequences already arose upon the execution of the contract of sale because, pursuant to Maryland law, the contract vested Chesapeake with an equitable interest in the Property. The trustee has not had an opportunity to respond to that contention. Nor has the trustee addressed how the estate can avoid the damage claim, entitled to administrative priority under 11 U.S.C. § 503(b)(1)(A), for breach of contract that would arise were he to abandon the Property, thus disabling himself from complying with the contract. The contract is not an executory contract "of the debtor" within the meaning of 11 U.S.C. § 365 that could be rejected pursuant to that provision (with rejection damages treated by 11 U.S.C. § 502(g)(1) as a prepetition claim that would share pro rata with other prepetition unsecured non-priority claims). The court will set the matter down for hearing to hear oral argument on this issue

5

of whether the trustee ought to be allowed to seek to abandon the Property. The trustee is free at that hearing to attempt to sway me to his view on the other issues, but I am unaware of any reason to think that he has any likelihood of causing me to change my preliminary views expressed above.

V

It is thus

ORDERED that a hearing on Chesapeake's Motion to Compel Trustee to Complete Sale of Real Property will be held on October 15, 2008, at 2:00 p.m.

[Signed and dated above.]

Copies to: Debtor; Debtor's attorney; Chapter 7 Trustee; Office of United States Trustee; Katherine M. Sutcliffe Becker, Esq.; Troy C. Swanson, Esq.; Craig M. Palik, Esq.