The document below is hereby signed.

Signed: January 16, 2009.



_S. Martin Teel Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| LINTON PROPERTIES, LLC, <u>et al.</u>, | ) ) | Case No. 08-00095 (Chapter 7) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **For Publication in West's** |
| | ) | **Bankruptcy Reporter** |

MEMORANDUM DECISION RE
TRUSTEE'S PROPOSED ABANDONMENT OF REAL PROPERTY

Chesapeake Bank & Trust Co. ("Chesapeake") sought to compel the Chapter 7 trustee of the bankruptcy estate of the debtor Linton Properties, LLC ("Linton") to complete an auction sale of real property held by the debtor at the time it was serving as a debtor in possession in this case prior to the conversion of the case from Chapter 11 to Chapter 7. At the hearing on that motion, the trustee persuaded me to permit him to attempt to abandon the real property, which would have the effect of depriving Chesapeake of its remedy of specific performance to compel completion of the auction sale. When the trustee gave notice of a proposed abandonment of the real property, Chesapeake objected to the proposed abandonment, and the matter was heard on

January 14, 2009.  For reasons enunciated at the hearing of January 14, 2009, and elaborated upon below, I will sustain Chesapeake's objection to the trustee's proposed abandonment of the real property.

I

By an order entered on June 13, 2008, the court authorized the debtor in possession to sell certain condominium units (the "Property") located in Maryland at auction.  The order did not require that the court confirm the successful bids at the auction sale as being in the best interest of creditors and the estate.  The auction sale was held on June 28, 2008, with Chesapeake being the successful bidder for the Property except, as I understand it, for one unit purchased by an individual who, the trustee has not contested, desires to have the trustee complete the sale to him.  Chesapeake would receive the proceeds of the sale of that unit pursuant to its prepetition lien, and thus has standing to address whether that unit of the Property should be abandoned despite the purchaser's desiring to complete the purchase.[1]

When the hammer fell at the auction sales, that gave rise to binding contracts that were authorized by the court's prior order

---

[1] The court's ruling will not preclude the trustee's renewing the proposed abandonment of that unit (or obtaining an amendment of the court's order denying abandonment of that unit) should the purchaser decide he no longer desires to complete the purchase (or is willing not to complete the purchase so long as the trustee agrees to return the deposit to him).

2

authorizing the auction sale.  Those contracts, entered into by the debtor in possession exercising the powers of a trustee pursuant to 11 U.S.C. § 1107(a), are binding upon the successor trustee.  <u>Armstrong v. Norwest Bank, Minneapolis, N.A.</u>, 964 F.2d 797, 801 (8th Cir. 1992).  The trustee has not filed a motion under Fed. R. Bankr. P. 9024 (and Fed. R. Civ. P. 60) to set aside the order authorizing the auction sale.

The decisions the trustee relies upon in contending that he is not bound by the contracts of sale, <u>In re Cmty. Hosp. of Rockland County</u>, 15 B.R. 785, 787 (Bankr. S.D.N.Y. 1981), and <u>In re Silver Mill Frozen Foods, Inc.</u>, 32 B.R. 783, 786 (Bankr. E.D. Mich. 1983), are distinguishable or unpersuasive.  They dealt with whether a judgment in prior litigation between a debtor in possession and a second party bars a successor trustee from pursuing claims against the second party that were not raised in the prior litigation.  The judicial doctrine of claim preclusion (res judicata), which is not involved in this matter, is a flexible doctrine that arguably might be held inapplicable when a debtor in possession is replaced with a trustee who has none of the inherent conflicts that a debtor (whose interests as the debtor--versus his fiduciary interests as a debtor in possession--can diverge from the interests of creditors) may have when participating in litigation as a debtor in possession.  In contrast, a contract entered into by a debtor in possession is a

binding obligation of the estate, and under the reasoning of <u>Armstrong v. Norwest Bank</u> should be binding on a successor trustee. To the extent that <u>In re Cmty. Hosp. of Rockland County</u> and <u>In re Silver Mill Frozen Foods, Inc.</u> could be read as supporting a conclusion to the contrary, they are unpersuasive.

The trustee pointed to two adverse consequences which may arise from completing the sale. The sale may subject the bankruptcy estate to claims pursuant to warranties imposed by Maryland law on any developer (like Linton) who sells condominium property. It may also subject the bankruptcy estate to adverse tax consequences. Creditors and the United States Trustee, however, were given the opportunity to object to the proposed auction sale, and did not object to it. Except in extraordinary circumstances (such as fraud in obtaining the sale order or collusive bidding), a successful bidder at a duly authorized auction sale is entitled to assume that the agreement of sale arising from that successful bid will be enforceable, without parties in interest being allowed to revisit the pros and cons of whether permitting an auction sale was in the best interest of creditors and the estate.

II

The trustee contends that he ought to be allowed to abandon the Property because of the burdens the estate would suffer were he to complete the sales. If he abandons the Property,

Chesapeake would be left with no ability to compel specific performance by the trustee.  Moreover, the trustee points out, the debtor in possession executed contracts after the sale that called for only a return of the purchasers' deposits if the sales were not completed, and obviously returning the deposits would not impose a burden on the estate.  In other words, the trustee contends that the administrative claim for damages for not performing the contract will be relatively harmless to the estate.

I reject the trustee's argument that he should be allowed to abandon the Property and thereby avoid the burdens on the estate that would arise from complying with the contracts.  The trustee can no more abandon the Property, over Chesapeake's objection, than he could enter into a contract of sale with a new purchaser at a higher price.

The trustee surely could not sell the Property to a new purchaser who would pay a greater amount than called for by the existing contracts.  True, 11 U.S.C. § 363 authorizes a trustee to sell property of the estate upon approval of the court, and, the trustee contends, the Property remains property of the estate.[2]  But permitting the trustee, over objection of the

---

[2] Chesapeake contends that the equitable ownership of the Property passed to the purchasers by reason of the contracts of sale, with the trustee left with only legal title, but I need not decide that issue.

purchasers under the existing contracts, to sell the Property to a new purchaser would be inconsistent with the trustee's binding obligations under the existing contracts of sale, and it is intuitive that he cannot be permitted to do so.  The trustee similarly ought not be permitted, over the objection of Chesapeake, to abandon the property and thereby destroy the right of the purchasers to seek specific performance as that is similarly inconsistent with the trustee's binding contractual obligations.  But why is it that the inconsistency of a new sale or abandonment with the trustee's binding contractual obligations precludes such a new sale or an abandonment over Chesapeake's objection?

    Under 28 U.S.C. § 959(b), a trustee:

    shall manage and operate the property in his possession
    as trustee . . . according to the requirements of the
    valid laws of the State in which such property is
    situated, in the same manner that the owner or
    possessor thereof would be bound to do if in possession
    thereof.

That provision supplies indirect support for the conclusion that Chesapeake ought to be able to have the court bar an abandonment of the property.  If § 959(b) applied to a sale of the Property, the attempted abandonment of the property would be viewed as impermissible under § 959(b) because Maryland law would not permit the trustee, over the objection of Chesapeake, to obtain a court order frustrating the right of specific performance under the subject contracts.  Section 959(b) is not directly applicable

6

because the trustee is not operating the Property as a business, see <u>Saravia v. 1736 18th Street, N.W. Ltd. Partnership</u>, 844 F.2d 823, 827 (D.C. Cir. 1988), and, in any event, because a sale of the Property is not an act of managing and operating the Property.  Nevertheless, § 959(b) furnishes evidence that Congress did not intend that a bankruptcy trustee be allowed, over the objection of an affected entity, to utilize her power of sale under § 363 or her power of abandonment under § 554 to frustrate the state law remedy of specific performance to which she became subject after entering into a binding contract of sale.  <u>Cf.</u> <u>Midlantic Nat. Bank v. New Jersey Dept. of Environmental Protection</u>, 474 U.S. 494, 505 (1986).

When a trustee is not operating the estate's property as a business and is only liquidating the estate's property such that § 959(b) is inapplicable, her entry into a binding contract to sell estate property nevertheless subjects her to nonbankruptcy law governing that contract of sale.  Section 363 may alter nonbankruptcy law with respect to the steps leading to entering into a binding contract for a sale of property, but with exceptions (such as 11 U.S.C. § 363(n)) that are of no relevance here, it does not purport to alter the law that will govern once the trustee enters into that binding contract of sale.  Similarly, although 11 U.S.C. § 554 says that a trustee may abandon burdensome property, it does not purport to alter the

purchaser's right, to which a trustee has subjected herself by entering into a binding contract of sale, to request a court to preclude the trustee from taking any step to frustrate the purchaser's right of specific performance.

Outside of bankruptcy, a purchaser under a contract of sale would be entitled to enjoin any attempt by the seller to frustrate the purchaser's remedy of specific performance (such as an attempt by the seller to convey the property to a new purchaser). Nothing in the Bankruptcy Code precludes a purchaser of property of the estate pursuant to a contract of sale entered into with the bankruptcy trustee from similarly invoking the purchaser's rights under nonbankruptcy law to bar the trustee from taking the step of abandoning the property in frustration of the purchaser's remedy of specific performance.

The trustee might argue that in one instance (inapplicable here) the Bankruptcy Code expressly recognizes that a trustee may use one of her statutory powers to evade the remedy of specific performance with respect to an executory contract that became binding on the trustee postpetition, and that this implies that a trustee similarly may resort to the power of abandonment under § 554 to evade the remedy of specific performance with respect to an executory contract entered into postpetition. Under 11 U.S.C. § 365(a), a trustee may assume or reject an executory contract of the debtor. When the trustee assumes the executory

contract it becomes binding on the trustee.  Nevertheless, 11 U.S.C. § 365(g)(2), by addressing the time at which a breach of an executory contract is deemed to have occurred when that contract has been assumed but is later rejected, recognizes that the trustee can invoke § 365(a) to reject an assumed contract. Such rejection of the previously assumed contract makes the remedy of specific performance unavailable to the other party to the contract, leaving the party under § 365(g)(2) with only a claim for breach (albeit an administrative claim for breach).  If the power of rejection can be brought to bear on an assumed contract and the remedy of specific performance thereby evaded, the argument would follow that a trustee is free as well to invoke other statutory powers to evade the remedy of specific performance with respect to a contract entered into by the trustee postpetition.

But the express recognition in § 365(g)(2) that a trustee has the right to reject an assumed contract and thereby evade specific performance in the case of such an assumed contract modifies the rights of the other party to the executory contract that arose from assumption.  Specifically, with respect to the act of rejection, § 365(g)(2) makes unavailable to the other party his right, under the nonbankruptcy law that became applicable by reason of assumption, to bar the trustee from taking any act to evade the remedy of specific performance.

9

In contrast, when the trustee enters into a completely new contract postpetition, she has no power to reject that contract (as it is not a contract "of the debtor" under § 365(a)). In turn, § 554 does not acknowledge a power to evade the right of specific performance via abandonment, and thus does not negate the other party's right to invoke his right under nonbankruptcy law (that came into place by reason of the trustee's entering into the contract) to bar the trustee from engaging in an act to evade the remedy of specific performance. Thus, when a trustee attempts to invoke § 554 to abandon the property that is the subject of the contract, the other party is entitled to bar the trustee from abandoning the property.

There is a sound reason why Congress would permit the evasion of the remedy of specific performance in the case of an assumed prepetition contract but not in the case of a contract entered into postpetition. Were a court to permit a bankruptcy trustee to abandon a property after having entered into a binding contract of sale, that would likely lead to future bankruptcy trustees' sales of property yielding less than they would otherwise because of the uncertainty that the trustee might decide to abandon the property if she determines that completing the sale will generate adverse consequences to the estate that outweigh the benefit that the estate would realize by completing the sale. This further supports the conclusion that the trustee

here ought not be allowed, over the objection of Chesapeake, to shirk his contractual obligation to perform under the contracts of sale. It also distinguishes this case from the case of rejection of an assumed executory contract of sale: such a contract is necessarily one entered into prepetition, and permitting the trustee to evade the remedy of specific performance as to prepetition contracts will not lead to a chilling of the amount that purchasers are willing to pay when a trustee sells property postpetition.

III

This case is distinguishable from a trustee's utilizing his powers under the Bankruptcy Code to eliminate the rights to specific performance held by a purchaser under a debtor's *prepetition* contract of sale. If a trustee invokes 11 U.S.C. § 365 to reject the contract of sale, the Bankruptcy Code recognizes that although that step is inconsistent with what *the debtor* had agreed to prepetition, it is not inconsistent with conduct of *the trustee*.[3] The rejection of a prepetition executory contract that has not been assumed in the case constitutes a breach of the contract immediately before the date

---

[3] The trustee might also first abandon the property as burdensome under 11 U.S.C. § 554, with rejection (instead of assumption) of the executory contract being the step that logically next follows. The abandonment of the property would eliminate the remedy of specific performance even if the contract were assumed.

of the filing of the petition, 11 U.S.C. § 365(g)(1), and gives rise to a claim that is allowed "the same as if such claim had arisen before the date of the filing of the petition." 11 U.S.C. § 502(g)(1). Accordingly, a purchaser entering into a contract of sale outside of bankruptcy ought not make the mistake of agreeing to a provision that fixes liquidated damages for breach of the contract at a relatively small amount, thinking that he can always obtain specific performance if the liquidated damages provision would not make him whole. Contracts are written with the bankruptcy laws being an element of the contract that will govern what happens when bankruptcy intervenes, and the remedy of specific performance under the prepetition contract of sale can be eliminated through rejection of the executory contract. The purchaser's right under nonbankruptcy law to have a court prevent the seller from frustrating its right to specific performance does not come into play because the trustee is not bound by the contract (other than with respect to a claim for breach as of the petition date) if she rejects the contract.[4]

But the contracts of purchase at issue here did not expose Chesapeake to a risk that the trustee would be able, despite objection by Chesapeake, to reject the contracts, or otherwise

---

[4] With respect to the time at which a breach is deemed to have occurred, there is a caveat to this. If an executory contract is assumed, and only later rejected, 11 U.S.C. § 365(g)(2) specifies a postpetition time at which the rejection is deemed to constitute a breach of the contract.

act to evade Chesapeake's remedy of specific performance.  The contracts are not executory contracts "of the debtor" within the meaning of 11 U.S.C. § 365 (a) that can be rejected pursuant to that provision.  Because the debtor in possession was exercising the powers of a trustee pursuant to 11 U.S.C. § 1107(a) in selling the property, the sales contracts were contracts of the estate, not of the debtor.  Moreover, the estate (through the successor trustee) did not retain a right, over Chesapeake's objection, to abandon the Property.  The binding contracts of sale subjected the estate to Chesapeake's right under nonbankruptcy law to have the court bar any act by the trustee that would destroy the purchasers' rights to specific performance of the contracts.  In no way can Chesapeake be treated like a prepetition purchaser whose contract necessarily includes the prospect that if bankruptcy intervenes, the purchaser will be powerless to prevent a trustee's rejecting the executory contract if assumption of the executory contract would be disadvantageous to the estate.

IV

An order follows sustaining Chesapeake's objection to the trustee's proposed abandonment of the Property.

[Signed and dated above.]

Copies to: Debtor; Debtor's attorney; Chapter 7 Trustee; Office of United States Trustee; Katherine M. Sutcliffe Becker, Esq.; Troy C. Swanson, Esq.; Craig M. Palik, Esq.